```
UNITED STATES DISTRICT COURT                FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
```

JAMAINE KINGSTON,

                Plaintiff,

-versus-

DEUTSCH BANK NATIONAL TRUST
COMPANY f/k/a BANKERS TRUST
COMPANY OF CALIFORNIA, N.A., FIRST
UNITED MORTGAGE BANKING CORP.,
AMERICA'S SERVICING COMPANY,

                Defendants.

MEMORANDUM AND ORDER
12-CV-6257

APPEARANCES

By:        Robin L. Muir
            Allison J. Schoenthal
            Lisa J. Fried
            Hogan Lovells US LLP
            875 Third Avenue
            New York, NY 10022
            *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

        Jamaine Kingston brings a *pro se* civil action pursuant to 42 U.S.C. § 1983 and § 1985 seeking damages and/or declaratory and injunctive relief against Deutsch Bank National Trust Company f/k/a Bankers Trust Company of California, N.A. ("Deutsch Bank"), First United Mortgage Banking Corp. ("First United"), and America's Servicing Company ("ASC"). On January 14, 2013, defendant Wells Fargo Bank, successor by merger to Wells Fargo Mortgage d/b/a/ America's Servicing Company, moved to dismiss all claims against it pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. In the alternative, ASC contends that the claims are barred by *res judicata* or that the complaint fails to state a claim and must be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Kingston did not submit an opposition to the present motion and did not appear for oral argument on either of two dates scheduled: February 20 and March 27, 2013.[1] For the reasons stated below, defendant's motion is granted, and all claims are dismissed against ASC with prejudice.

BACKGROUND

A.       *Parties*

ASC is a "servicing division of Wells Fargo Bank, N.A. and was the servicer of the mortgage loan at issue in this case." Def.'s Mem. of Law in Supp. of Mot. to Dismiss 2, Jan. 14, 2013, ECF No. 10. The loan at issue was part of a mortgage loan trust: Nomura Asset Acceptance Corporation, Mortgage Pass-Through Certificates, Series 2007-1. *See* Muir Decl. in Supp. of Mot. to Dismiss, Ex. 1, ECF No. 11-1. ASC acts as the servicer of loans in this trust.

B.       *Factual Allegations*

The following facts are drawn from the complaint and from the judicially-noticed record of related state court proceedings.[2] On September 20, 2006, in connection with the purchase of real property located at 720 Marcy Avenue, Brooklyn, NY 11216 (the "property"), Kingston obtained a mortgage loan in the principal amount of $796,000.00 from First United Mortgage Lending Corporation.[3] Note, ECF No 11-2. Kingston alleges that he

---

[1]       Kingston contacted counsel for ASC by telephone on February 19, 2013 seeking additional time to oppose the motion. *See* Letter Mot. for Extension of Time, Feb. 21, 2013, ECF No. 15. Kingston subsequently sought an extension from this Court. Letter Mot. for Extension of Time, ECF No. 16. I granted Kingston's untimely motion for an extension and set a new briefing schedule and oral argument date. Kingston did not submit opposition papers and failed to appear at the rescheduled oral argument date on March 27, 2013.

[2]       On a motion to dismiss, a court may consider documents attached to, or incorporated by reference in the complaint, and matters of which judicial notice may be taken. *See Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Pursuant to this principle, in deciding this motion, I have considered the complaint and state foreclosure documents that are matters of public record and incorporated by reference in the complaint. *See Taylor v. Vt. Dep't. of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002).

[3]       A mortgage is "[a] lien against property that is granted to secure an obligation (such as a debt) and that is extinguished upon payment or performance according to stipulated terms." Black's Law Dictionary 1101 (9th ed. 2009). If the debtor defaults on repayment of the debt, the creditor can use its rights in the debtor's property to fulfill the debtor's obligation. The process by which the creditor does this is foreclosure.

was "not employed nor were there income verifications in order to assure that the loan would be paid back," and he was issued a "high interest bearing loan." Compl. ¶ 12, ECF No. 1. He alleges that the defendants[4] "inflated[ed] the true value of the property . . . over 200%," *id.* ¶ 46.

On September 13, 2007, First United named Kingston as a defendant in a foreclosure action brought in the Supreme Court of the State of New York, Kings County (the "state court"). In his complaint in this Court, Kingston alleges that he did not receive proper service of a summons. *Id.* ¶ 14-15. First United moved for default judgment when no one appeared in the foreclosure action. The state court entered a judgment of foreclosure and served Kingston with a Notice of Sale advising him that the property would be sold at auction. Affirmation in Supp. of Order to Show Cause ¶¶ 3-4, ECF No 11-7. Kingston alleges that the state court did not request proof of the note and mortgage prior to foreclosing, Compl. ¶ 18, and that the state court entered the foreclosure order even though the "moving party" did not "legally own the property . . . [or] have legal standing" to foreclose. *Id.* ¶ 47.

On March 24, 2010, Kingston – though counsel – moved in state court to vacate the judgment of foreclosure and sale and to dismiss the foreclosure action on the ground of lack of standing to foreclose. Order to Show Cause 2-3, ECF No 11-7. In support of the motion, Kingston's counsel filed an affirmation stating: "[a] review of the file in this matter reveals substantial irregularities in the manner in which the Judgment of Foreclosure was obtained" and requesting "that the Judgment be vacated and the action dismissed." *Id.* ¶¶ 6, 11-13, 21-23.

The Honorable Robert J. Miller of the Supreme Court of the State of New York held oral argument on Kingston's order to show cause. On November 5, 2010, Judge Miller

---

[4] In his complaint, Kingston alleges that "the *plaintiff* had abused its position in order to inflate the true value of the property . . . " Compl. ¶ 46 (emphasis added). Construing the complaint liberally in light of the plaintiff's *pro se* status, I conclude that Kingston means to make allegations against the *defendants*. The mistake no doubt originated in the fact that the complaint in this case appears to be a copy of Kingston's response to the foreclosure proceeding in state court, which refers to Kingston (the plaintiff in this action) as the defendant.

denied Kingston's motion and lifted the stay on the sale of the property. Order, ECF No. 11-8. On July 11, 2011 Kingston filed a *pro se* emergency application to show cause why the sale should not be stayed and a Temporary Restraining Order be issued, but the state court again denied his application, noting "[the] defendant's affidavit misstates the absence of a prior application for the same relief." Order, ECF No. 11-9. On December 13, 2012, Kingston attempted to make a second emergency application to vacate the judgment of foreclosure and sale and dismiss the foreclosure action. The state court again refused to sign this order, indicating that it was the third "motion for the same relief . . . . [Judge Miller] denied the first one on the merits, after oral argument, when [Kingston] had counsel . . . . That is the law of the case." Order 4, ECF No. 11-10.

A few days later, on December 20, 2012, Kingston commenced this *pro se* action seeking an "order to show cause to dismiss the complaint and cancel[] the lis pend[ens] and to discharge the mortgage along with vacating the judgment of foreclosure and sale." Compl. ¶ 2. Specifically, Kingston alleges that he was "pressured to purchase more than five different loans from the same lender despite the fact that [he] had no real income verification," *id.* ¶ 44; the defendants "inflat[ed] the true value of the property;" and the defendants "do[] not legally own the property nor do [they] have legal standing to commence such an action." Compl. ¶¶ 44, 46-47. He also alleges that the foreclosure and sale was obtained in violation of plaintiff's constitutional rights and through "predatory lending fraud." *Id.* ¶ 2.

C. *Scope of Dispute*

Since Kingston is a *pro se* litigant, his pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted); *accord Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*, . . . we remain obligated to construe a *pro se* complaint liberally."). His complaint is "construed liberally and interpreted 'to raise the strongest

4

arguments' possible." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)). Applying this principle, I interpret Kingston's complaint to allege the following causes of actions against this Defendant: (1) violations of the Fifth and Fourteenth Amendments' due process clause; (2) common law fraud; and (3) a challenge to the defendants' lending practices as violative of the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639 *et seq*. and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*.[5]

Kingston seeks an injunction preventing sale of the real property and a "declaratory judgment pursuant to [§] 1921 [of the N.Y. Real Property Actions and Proceedings Law] . . . [to] declare[] the mortgage . . . to be predatory lending and to discharge the loans in its totality . . . ." Compl. ¶ 48. In the alternative, he seeks $1.3 million in damages "for the entire balance of [the] interest in the property including maintenance and restoration and repairs," *id.* ¶ 29. Finally, he seeks a "stay of the proceedings . . . because the defendant herein was not present at the premises on the day of service." *Id*. ¶ 13.

DISCUSSION

A. *Federal Due Process Claims*

In the complaint, Kingston brings a claim for due process violations and invokes 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1985 ("Section 1985"). Compl. ¶¶ 1-2. The defendant argues that this Court lacks subject matter jurisdiction over the plaintiff's due process claims pursuant to the *Rooker–Feldman* doctrine. For the reasons that follow, I agree.

1. *Legal Standard*

Subject matter jurisdiction is the legal authority of a court to hear and decide a particular type of case. Federal courts are courts of limited subject matter jurisdiction; they

---

[5] In 1994, Congress amended TILA by adding the Home Ownership and Equity Protection Act (HOEPA) to address the targeting of persons for "credit on unfair terms" based on income, race or ethnicity. S. Rep. No. 103-16, at 21 (1993).

may exercise jurisdiction only if it is specifically authorized. "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." *Sharkey v. Quarantillo*, 541 F.3d 75, 82-83 (2d Cir. 2008) (internal quotation marks omitted). A court also has an independent responsibility to *sua sponte* dismiss an action pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure where no subject matter jurisdiction exists.

The *Rooker-Feldman* doctrine provides that United States distrct courts may not sit in direct review of state court decisions unless Congress has specifically authorized such relief. *See Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The Supreme Court has authority to hear appeals of final decisions of state court judgments. The *Rooker-Feldman* doctrine bars a losing party from bringing an appeal of a state court judgment in a United States district court instead of the Supreme Court.[6] A federal district court also lacks jurisdiction over all claims that are "inextricably intertwined" with a prior determination issued by a state court. *Feldman*, 460 U.S. 462, 483 n. 16. However, a district court retains jurisdiction to hear a case that presents an "independent claim" even if the effect of raising this "independent claim" will challenge or deny some conclusion reached by the state court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283-84 (2005); *see also id.* at 292 ("If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party. . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion') (internal quotation marks and brackets omitted).

---

[6] The plaintiffs in *Rooker* brought a claim in a U.S. district asking the court to declare as null and void the judgment of an Indiana court, which had been affirmed by the state's supreme court. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The plaintiffs in *Rooker* alleged that the state court decision violated the Contracts Clause, due process, and equal protection in that it gave effect to a supposedly unconstitutional state statute. *Id.* at 415. The district court dismissed the case, finding it not to be within its jurisdiction as defined by Congress. The Supreme Court agreed, holding that an action in federal district court is not the "appropriate appellate proceeding" in which to correct a state court error. *Id.* at 415-16.

Four requirements must be met for the *Rooker–Feldman* doctrine to apply: "First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (internal quotation marks and brackets omitted).

2.  *Analysis*

Looking to the requirements of *Rooker–Feldman* test outlined by the Second Circuit in *Hoblock*, I find that all four requirements are satisfied with respect to Kingston's due process claims. First, Kingston's complaint alleges that the state court judgment of foreclosure resulted in an unfavorable decision. Second, the last state court action relating to this matter is a New York state court decision on December 12, 2012 denying an emergency stay. Since that decision predates the December 20, 2012, filing of the instant complaint, I conclude that all pertinent state-court decisions were issued before proceedings in this Court were commenced.[7]

The substantive requirements of *Rooker–Feldman* also are met here. Kingston's due process claims – alleging that "process was not served upon" him or any other person, *see* Compl. ¶ 14, and that the bank lacked "legal standing" to foreclose, *id.* ¶ 27, 52 – explicitly challenge the validity of the state judgment of foreclosure and ask this Court to engage in an impermissible review of the state court judgment. Kingston's alleged injury – the loss of his home – is caused by a state-court judgment and he invites this Court to reject the state court conclusions. "Courts in this Circuit have consistently held that a plaintiff who lost possession of his home in a state court foreclosure proceeding is barred by the *Rooker–*

---

[7] Kingston has not alleged, and there is nothing in the record to show, that Kingston appealed the state court judgment. A judgment becomes final when the state court ruling carries preclusive effect. *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24 & n. 10 (1st Cir. 2005). Therefore, the state court proceeding ended for *Rooker-Feldman* purposes when plaintiff allowed the time for appeal to lapse without filing an appeal in state court.

*Feldman* doctrine from attacking the state court judgment in federal district court." *See Gray v. Americredit Fin. Servs., Inc*., No. 07 Civ 4039, 2009 WL 1787710, at *4 (S.D.N.Y. June 23, 2009) (listing cases). I have no jurisdiction to reverse the state court, as the Supreme Court is the sole court authorized to hear appeals of state court judgments. Accordingly, I conclude that Kingston's due process claims are barred by the *Rooker-Feldman* doctrine. *See Hoblock*, 422 F.3d at 86-87. It follows that his claims for a declaratory judgment and injunctive relief are also barred by *Rooker-Feldman* since both would require this Court to invalidate a state court judgment.[8] Since I conclude that the due process claims are barred by the *Rooker-Feldman* doctrine, I need not – and do not – consider whether the due process claims also are barred under the doctrine of *res judicata*.[9]

B.  *Common Law Fraud and Predatory Lending*

In contrast to his due process claims, Kingston's allegations of "fraud" and "predatory lending" allege injuries caused in the *formation* of the underlying mortgage agreement. These allegations originate from actions that *precede* a state cou rt judgment; accordingly, they are not caused by the state court judgment and, thus, are not barred by the *Rooker-Feldman* doctrine. *See McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007) ("[A] party is not complaining of an injury caused by a state-court judgment when the exact injury

---

[8] Kingston brought his due process claims under 42 U.S.C. § 1983, a statute that authorizes private persons to enforce their federal constitutional rights against defendants who act under the color of state law. His claims fail for the additional reason that Kingston fails to allege any facts that plausibly suggest that this defendant is a state actor or "a willful participant in joint activity with the State or its agents." *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992). Kingston also purports to bring this action under 42 U.S.C. § 1985, but he fails to state a claim under this statute either. To state a claim under 42 U.S.C. § 1985, a plaintiff must demonstrate a: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp*., 7 F.3d 1085, 1087 (2d Cir. 1993). "[T]he conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id*. at 1088 (internal quotation marks omitted). Even construing the complaint liberally, Kingston does not allege that any wrongdoing by the defendant was motivated by race or class. Accordingly, Kingston has not stated a claim under § 1985.

[9] Under the doctrine of *res judicata*, "'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *Monahan v. New York City Dep't. of Corr*., 214 F.3d 275, 284 (2d Cir. 2000) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). *Res judicata* applies where: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Id*. at 285 (citation omitted).

of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been caused by those proceedings.") (internal quotation marks omitted); *see also Hinds v. Option One Mortg. Corp.*, 11 Civ 6149, 2012 WL 6827477, *4 (E.D.N.Y., Dec. 12, 2012) (finding that the *Rooker–Feldman* doctrine does not divest the court of jurisdiction over claims to compensate for injuries arising from fraud where the alleged injury was caused by a defendants' prior conduct, and not the state court judgment).

Although the *Rooker–Feldman* doctrine does not divest the Court of jurisdiction to hear claims alleging fraud and predatory lending in the formation of the mortgage, I conclude that the complaint – even liberally construed to raise its strongest possible claims against ASC – fails to plead a claim for relief against this defendant and, accordingly, is dismissed.[10] Fed. R. Civ. P. 12(b)(6).

1. *Legal Standard: Fed. R. Civ. P. 12(b)(6)*

Rule 8 of the Federal Rules of Civil Procedure provides that a complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although courts must give *pro se* pleadings a liberal construction, "the basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike." *Wynder v. McMahon*, 360 F.3d 73, 79, n.11 (2d Cir. 2004).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive dismissal, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2. *Analysis*

---

[10] Because I conclude that dismissal is appropriate under Rule 12(b)(6), I decline to consider whether *res judicata* is an independent basis on which to dismiss the fraud and predatory lending claims against this defendant.

Kingston alleges that the defendant "participated in a fraud and a scheme to defraud" him. Compl. ¶ 2. To properly plead fraud, the complaint must lay out facts supporting the required elements of the cause of action. "Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001). A fraud claim also must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Generalized fraud allegations are insufficient to state a claim against a defendant. *See Eternity Global Master Fund v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).

The present complaint pleads fraud against all defendants generally, without ascribing specific fraudulent statements or omissions to any particular defendant. The complaint does not mention or allege any facts bearing on the conduct of ASC and does not allege any facts bearing on any actions that ASC undertook (or failed to undertake), much less allege that these acts or omissions were false or misleading. Kingston fails to allege any facts on which a reasonable fact-finder could conclude that *this* particular defendant was involved with the alleged fraud in the formation of the underlying mortgage. Even under the most liberal reading of the complaint, I conclude that Kingston fails to allege facts raising a plausible claim for relief against this defendant. Accordingly, this fraud claim is dismissed for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

To the extent that Kingston's allegations against ASC suggest a violation of TILA or HOEPA for predatory lending, I conclude that Kingston has failed to state a claim against this Defendant that is plausible on its face. Under TILA, creditors must meaningfully disclose all credit terms to consumers in order to avoid the uninformed use of credit. *See* 15 U.S.C. § 1601(a). Under HOEPA, creditors must make certain disclosures of financial

information in connection with high cost mortgage loans. *See id.* §§ 1602(aa)(1) & 1639 (describing information that must be disclosed to consumers by a creditor, including annual percentage rate and monthly payment); 12 C.F.R. § 226.32(c) ("Section 32" of Regulation Z of the Truth in Lending Regulations) (same). Even assuming ASC is a "creditor" under 15 U.S.C. § 1602 and Regulation Z, Kingston has made no allegation that it failed to comply with the statute's disclosure requirements, nor can his complaint be reasonably construed to make such an allegation. Accordingly, these federal claims are dismissed as well.

Generally, I would grant leave to amend the complaint to afford a *pro se* plaintiff a chance to remedy its deficiencies. But here I conclude that even a liberal reading of the complaint fails to give any indication that a valid claim might be stated against ASC. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also* Fed. R. Civ. P. 15(a) (The court should freely give leave [to amend the pleadings] when justice so requires."). Since I conclude that any attempt to re-plead would be futile,[11] plaintiff's fraud and predatory lending claims against ASC are dismissed with prejudice.

C.  *Conclusion*

Kingston has failed to respond to the motion and failed to show up in court when the motion was heard. The motion is therefore granted as unopposed. Also, for the reasons set forth above, I conclude that the motion by ASC has merit, and, on that independent basis, the motion to dismiss is granted in its entirety and the case against ASC is dismissed with prejudice.

So ordered.

_____
John Gleeson, U.S.D.J.

Dated: April 30, 2013
       Brooklyn, New York

---

[11] The statute of limitations governing an action for damages under TILA is one year. 15 U.S.C. § 1640(e). Because I dismiss the claim for failure to state a claim, I do not consider whether these claims would also be time barred.